UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

HARLEM GLOBETROTTERS INTERNATIONAL, INC.,

        Plaintiff,

- against -

GTFM, LLC,

        Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

05 CV 3727

Civ.

COMPLAINT

PLAINTIFF DEMANDS A
TRIAL BY JURY

ECF Case

JUDGE BUCHWALD

    Plaintiff Harlem Globetrotters International, Inc. ("plaintiff" or "HGI"), through its attorneys, Vladeck, Waldman, Elias & Engelhard, P.C., and Garvey & Stoddard, S.C, complains of Defendant GTFM, LLC ("defendant" or "GTFM"), as follows:

### NATURE OF THIS ACTION

    1.    Plaintiff HGI brings this diversity action to remedy Defendant GTFM's breaches of the June 1, 2002 licensing agreement between Plaintiff HGI and Defendant GTFM (the "Agreement") (attached as Exhibit A). Defendant GTFM has violated numerous provision of the Agreement by (a) failing to provide in a timely manner suitable team apparel to Plaintiff HGI for use by the Harlem Globetrotters basketball team; (b) failing to provide Plaintiff HGI with timely and complete royalty payments; (c) failing to promptly account for all merchandise sold under the Agreement; (d) failing to provide to Plaintiff HGI documents concerning Defendant GTFM's advertising expenses and advertising plans; (e) failing to cooperate and provide documentation necessary for Plaintiff HGI to exercise its contractual right to audit Defendant GTFM; and (f) continuing to use Plaintiff HGI's marks without authority.

225870 v1

2. Plaintiff HGI seeks injunctive and declaratory relief, and damages as result of Defendant GTFM's breaches of the Agreement.

## JURISDICTION AND VENUE

3. This Court has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332. Plaintiff HGI is incorporated in the state of Minnesota with its principal place of business in Phoenix, Arizona. Defendant GTFM is a New York limited liability company with its principal place of business in New York, New York. The amount in controversy exceeds $75,000.

4. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391 because Defendant GTFM resides in this District and a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

5. Plaintiff HGI owns and operates the Harlem Globetrotter basketball team (the "Harlem Globetrotters"). The Harlem Globetrotters are a legendary basketball team, largely comprised of exceptionally talented African-American players; successive generations of players continue to play exhibition games under the Harlem Globetrotters name.

6. Defendant GTFM manufactures and sells apparel and shoes under the trademarks "FUBU," "FUBU and design," "FB and design," "05," "FUBU Sport," "FUBU 05," and "Platinum FUBU," among others.

## FACTS

### The Licensing Agreement

7. In or about June 1, 2002, Plaintiff HGI and Defendant GTFM entered into the Agreement granting Defendant GTFM a non-assignable exclusive worldwide license to use,

among other things, the mark and designs of the Harlem Globetrotters (the "Licensed Property") to manufacture, market and sell apparel and related items.

8. The Agreement also granted Defendant GTFM the right to use the name, professional name, recorded voice material, signature facsimile, portraits, pictures and likenesses of any and all former, current and future Harlem Globetrotter players with the exceptions of Wilt Chamberlain and Magic Johnson. Plaintiff HGI and the previous owners of the Harlem Globetrotters had secured these rights from the former and current players and Plaintiff HGI agreed to indemnify Defendant GTFM and/or any sublicensee in the event of any legal action by a current or former player arising from the use of his likeness or name.

9. In exchange, Defendant GTFM agreed to pay Plaintiff HGI percentage royalty for net sales of all licensed products at the rate of 10% for the first $10 million of net sales and 8% of all net sales thereafter.

10. Defendant GTFM agreed to calculate Plaintiff HGI's royalties on a quarterly basis and pay such royalties <u>no later than</u> one month after the end of each quarter. Defendant GTFM also agreed to provide Plaintiff HGI with a written royalty statement for each quarterly period.

11. Defendant GTFM also agreed that it would keep accurate separate records of all transactions relating to the Agreement with Plaintiff HGI (including records by sublicensees), and further agreed to keep such records open to a yearly audit by Plaintiff HGI or its representative on ten days notice and to cooperate in any such audit.

12. Under the Agreement, Defendant GTFM was required to spend on advertising licensed products an amount equal to at least three percent of the net sales of such products. Defendant GTFM agreed to certify to Plaintiff HGI within thirty days after the end of

each contract year the amount spent on advertising in the contract year that had just ended and to provide a summary of advertising expenditures. Defendant GTFM's advertising expenditures were subject to the same audit procedures described above in paragraph 11.

13. In addition to paying Plaintiff HGI royalties for the first contract year, Defendant GTFM agreed to provide the Harlem Globetrotters with current-season team apparel having an aggregate wholesale value not to exceed $100,000. In the event the wholesale value of the team apparel exceeded $100,000, Plaintiff HGI would pay the excess within twenty days of receiving an invoice from Defendant GTFM. Defendant GTFM agreed to deliver the team apparel within ninety days of receiving Plaintiff HGI's order.

14. The Agreement also provided that either party could terminate the Agreement in the event of a breach of any material provision that was not cured within thirty days of written notice to the breaching party. The parties agreed that the payment of royalties and the keeping of records constituted material terms of the Agreement.

15. Upon the termination or expiration of the Agreement, Defendant GTFM and its sublicensees were required to "immediately discontinue use of the Licensed Property, whether in connection with the sale, advertisement or manufacture of Licensed Products or otherwise." However, Defendant GTFM and its licensee could sell merchandise on a non-exclusive basis for a period of 180 days after the Agreement terminated or expired.

## Defendant GTFM Fails to Make Timely and Complete Royalty Payments

16. Defendant GTFM has repeatedly failed to make timely and complete royalty payments to Plaintiff HGI as required by the Agreement. More specifically:

    a. For the quarterly periods ending August 31, 2002 and November 30, 2002, Defendant GTFM owed Plaintiff HGI royalty payments in the amount of

$441,888.30 due no later than December 31, 2002. Defendant GTFM withheld $141,888.30 of these payments until January 17, 2003 - seventeen days late;

b. For the quarterly period ending February 28, 2003, Defendant GTFM owed Plaintiff HGI royalty payments in the amount of $712,060.50 due no later than March 31, 2003. Defendant GTFM made one partial payment of $356,030.25 on April 16, 2003 - sixteen days late; and a second partial payment of $356,030.25 on May 7, 2003 - thirty-seven days late;

c. For the quarterly period ending May 31, 2003, Defendant GTFM owed Plaintiff HGI royalty payments in the amount of $539,530.21 due no later than June 30, 2003. Defendant GTFM made one partial payment of $250,000 on July 14, 2003 - fourteen days late; and a second partial payment of $289,530.21 - fifty-five days late.

d. For the quarterly period ending August 31, 2003, Defendant GTFM owed Plaintiff HGI royalty payments in the amount of $296,818.63 due no later than September 30, 2003. Defendant GTFM made a timely partial payment of $186,818.63 on September 22, 2003, but withheld $100,000 until October 31, 2003 - sixty-one days late.

17. Beginning in or about November 2003, Defendant GTFM began withholding royalty payments from Plaintiff HGI in violation of the Agreement. For the quarterly period ending November 30, 2003, Defendant GTFM owed Plaintiff HGI $263,975.81 due no later than December 31, 2003. Defendant GTFM made a partial payment on January 28, 2004 (twenty-eight days late) and claimed an offset of $205,640.60 for team apparel provided to

the Harlem Globetrotters.  Despite Plaintiff HGI's repeated requests, Defendant GTFM refused to provide any documentation detailing the wholesale value of the apparel.  Moreover, as described in further detail below, much of the team apparel provided by Defendant GTFM was unusable as it was either defective or delivered too late.

18. Not only did Defendant GTFM fail to make timely payments and improperly withhold payments in violation of the Agreement, it also failed to provide Plaintiff HGI with complete royalty statements for quarterly reporting periods.

19. For approximately the first year of the Agreement (June 2002 to May 2003), Defendant GTFM provided quarterly reports concerning only the sale of men's and boys' merchandise.  Defendant GTFM withheld from Plaintiff HGI quarterly reports concerning the sale of ladies merchandise and payments due on such sales until on or about the middle of 2003.

20. Likewise, Defendant GTFM withheld from Plaintiff HGI quarterly reports and payments for Japanese sales of Harlem Globetrotters licensed products.  Plaintiff HGI first learned about the Japanese sales on or about August 11, 2003, when Defendant GTFM sent an e-mail to Plaintiff HGI asking a question about Japanese trademarks.  Plaintiff HGI demanded that Defendant GTFM provide records concerning Japanese sales as Defendant GTFM had never reported any sales outside the United States.

21. After repeated requests for Japanese sales information by Plaintiff HGI, on or about January 28, 2004, Defendant GTFM finally produced a two page document detailing Japanese sales.  On February 5, 2004, Defendant GTFM made its first (and only) payment for Japanese sales - more than a year after some of the merchandise had been sold.

22. Defendant GTFM also withheld from Plaintiff HGI reports and payments concerning sales of licensed shoes on the internet by one of Defendant GTFM's sublicensees.  In

or about November 2003, Plaintiff HGI discovered that a sublicensee of Defendant GTFM was selling Harlem Globetrotter licensed shoes and immediately requested royalty reports and payments on such sales. Defendant GTFM did not produce a royalty statement until on or about January 21, 2004, and did not make any royalty payments on such sales until February 5, 2004.

<u>Defendant GTFM Refuses to Cooperate With The Audit</u>

23. On or about January 28, 2004, Plaintiff HGI notified Defendant GTFM that it was exercising its contractual right to audit Defendant GTFM's sales of Harlem Globetrotters licensed merchandise for the eighteen months ending November 30, 2003.

24. By letter dated February 5, 2004, Plaintiff HGI's auditors requested information needed to complete the audit, including, sales data, inventory transaction history, reconciliation of the royalty reports, details about chargebacks, details concerning unbilled inventory, and information concerning the over three-hundred thousand dollars in team apparel Defendant GTFM claimed to have sent the Harlem Globetrotters.

25. Despite repeated requests over the ensuing several months, Defendant GTFM failed to provide the information in violation of the Agreement. As a result, Plaintiff HGI was unable to complete the audit.

<u>Plaintiff HGI Terminates the Agreement Due to Defendant GTFM's Material Breaches</u>

26. Not only did Defendant GTFM fail to provide the information requested in the audit, it also failed to provide Plaintiff HGI with a quarterly royalty statement for the period ending February 28, 2004, which was due by March 29, 2004.

27. On April 1, 2004, Plaintiff HGI, through its counsel, served Defendant GTFM with a Notice of Default. Plaintiff HGI advised Defendant GTFM that it had breached the Agreement by (a) failing to provide a quarterly royalty statement by March 29, 2004; (b)

failing to keep accurate and separate records of all transactions related to the Agreement and failing to cooperate with the audit; and (c) withholding $205,640.60 in royalty payments without authorization. Plaintiff HGI notified Defendant GTFM that it had thirty days to cure the breaches or Plaintiff HGI would terminate the Agreement.

28. By fax dated April 1, 2004, Defendant GTFM produced a quarterly royalty report for men's and boys' apparel for the period December 1, 2003 through February 29, 2004. Once again, Defendant GTFM failed to report international sales and the sale of ladies apparel. The report claimed that Plaintiff HGI was owed only $24,938.55 - a fraction of the royalty payments earned by Plaintiff HGI in previous quarters. (For example, Plaintiff HGI earned $712,060.50 in royalty payments for same quarterly period one year earlier).

29. Moreover, Defendant GTFM categorically refused to pay Plaintiff HGI the royalty amounts it had earned under the Agreement or any future royalty amounts. Defendant GTFM claimed to be withholding the royalty payments until the lawsuits by several former Harlem Globetrotter players (against both HGI and GTFM) for allegedly using their names and likenesses without permission had been resolved. Defendant GTFM stated that it was placing Plaintiff HGI's current royalty earnings, as well as all future royalty earnings, in the account of its attorneys, the Gursky & Partners Trust Account.

30. In fact, Defendant GTFM had no contractual right to withhold royalty payments from Plaintiff HGI. Rather, the Agreement provided that Plaintiff HGI would indemnify Defendant GTFM if it was named in lawsuit by any former player. HGI offered to defend Defendant GTFM in the lawsuits by the former players and thus complied with its contractual obligations. Defendant GTFM, however, refused to cooperate with Plaintiff HGI's counsel and elected to hire its own attorneys.

31. By letter dated May 4, 2004, Plaintiff HGI notified Defendant GTFM that the Agreement was being terminated because of Defendant GTFM's failure to cure its breaches of the Agreement. In addition, Plaintiff HGI demanded payment of all monies owed through the May 4, 2004 quarterly period.

32. On June 30, 2004, Defendant GTFM produced a quarterly royalty statement claiming that Plaintiff HGI had earned $55,041.95 for the period March 1, 2004, through May 29, 2004. In an attached letter from Defendant GTFM's attorney Ira S. Sacks ("Sacks"), Defendant GTFM stated that once again it was withholding payment to Plaintiff HGI and placing the money in its attorneys' account. Moreover, in a letter dated September 23, 2004, Sacks threatened to withdraw the monies held in trust to pay his own legal fees.

33. Defendant GTFM did not send any royalty statements for the period May 30, 2004 to November 30, 2004. Rather, on or about March 18, 2005, Defendant GTFM sent a statement claiming that Plaintiff HGI had earned royalties in the amounts of $9,266.24 and $6,075.63 for the period December 1, 2004 to February 28, 2005. Once again, in violation of the Agreement, Defendant GTFM refused to pay these amounts to Plaintiff HGI.

34. Plaintiff HGI has complied fully with its obligation to indemnify Defendant GTFM by retaining counsel to defend both HGI and GTFM in the lawsuits by the former Harlem Globetrotter players. Plaintiff HGI has no contractual obligation to fund a separate, parallel defense by Defendant GTFM merely because Defendant GTFM has chosen to retain its own counsel.

<u>Defendant GTFM Fails to Provide the Harlem Globetrotters With Suitable Team Apparel</u>

35. During the first year of the Agreement, Defendant GTFM was required to provide the Harlem Globetrotters with suitable team apparel with an aggregate wholesale value

of up to $100,000. Plaintiff HGI agreed to reimburse Defendant GTFM for any amount in excess of $100,000.

36. For the first contract year, Defendant GTFM sent all of the team apparel ordered by Plaintiff HGI. Defendant GTFM filled Plaintiff's HGI's orders without stating that Plaintiff HGI had exceeded the $100,000 threshold or providing HGI with any statement detailing the wholesale value of the apparel provided to the team.

37. On or about November 3, 2003 (the second year of the contract), in response to Plaintiff HGI's concerns that Defendant GTFM had failed to deliver merchandise ordered months earlier, Defendant GTFM stated, for the first time, that Plaintiff HGI had exceeded the $100,000 threshold. Plaintiff HGI responded immediately that it did not want any apparel in excess of $100,000. Although GTFM initially stated that Plaintiff HGI could return any unwanted apparel, it subsequently refused to accept return of the merchandise.

38. Plaintiff HGI incurred substantial costs because much of the team apparel provided by Defendant GTFM was unsuitable or otherwise defective. Among other things:

    a. In or about July 9, 2003, Defendant GTFM delivered team apparel to the Harlem Globetrotters that was labeled incorrectly. All of the team's special appearance jerseys had the name "Meadowlark" embroidered on the back and all of the pants bore the number "36." Defendant GTFM refused to accept return of the apparel. Accordingly, at Defendant GTFM's suggestion, Plaintiff HGI had to spend $2,668.78 to have the jerseys and pants re-embroidered with the proper information;

    b. In or about May 5, 2003, Defendant GTFM promised to provide basketball shoes to the Harlem Globetrotters by July 1, 2003, for the

upcoming summer international tour. Defendant GTFM did not meet the deadline and therefore Plaintiff HGI was forced to purchase sneakers from another manufacturer at a cost of approximately $20,000. Moreover, when the shoes were eventually delivered, during the week of October 6, 2003 (over three months after the promised delivery date), the shoes were defective and unusable. Defendant GTFM refused to accept return of the defective shoes;

c. On or about August 11, 2003, Defendant GTFM promised to provide the Harlem Globetrotters with team apparel for the upcoming fall schedule by September 15, 2003. Defendant GTFM did not send the first partial shipment of merchandise until November 21, 2003 (after the team had completed its training camp, fall tours, and international tours), forcing Plaintiff HGI to buy apparel from other vendors at a cost of $9,482.70; and

d. On December 1, 2003, Defendant GTFM delivered another partial shipment of team apparel. The delivery included practice apparel that was the wrong size and therefore unusable by the team.

39. To date, Defendant GTFM has not reimbursed Plaintiff HGI for the amounts expended as a result of the faulty merchandise and, on information and belief, Defendant GTFM has not credited those amounts to Plaintiff HGI's account.

<u>Defendant GTFM Failed to Provide Plaintiff HGI with Advertising Reports</u>

40. Pursuant to the Agreement, Defendant GTFM was required to spend a certain percentage of yearly net sales on advertising and report such expenditures to Plaintiff

HGI.  Despite repeated requests by Plaintiff HGI beginning in or about June 2003, Defendant GTFM has failed to report advertising expenditures for the first year of the Agreement.

<u>Defendant GTFM Continues to Advertise Harlem Globetrotters Merchandise Without Authority</u>

41. As explained above, Plaintiff HGI terminated the Agreement on May 4, 2004, because Defendant GTFM failed to cure its breaches of the Agreement.  Defendant GTFM thus no longer had any legal right to use the Harlem Globetrotters mark, other than to sell-off leftover merchandise for a period of 180 days from May 4, 2004.  Nonetheless, Defendant GTFM continued to use the Harlem Globetrotters mark on its internet website, without authority, to market merchandise, throughout the 180-day period and thereafter.

42. On or about February 17, 2005, Plaintiff HGI notified Defendant GTFM in writing that its actions infringed on Plaintiff HGI's trademark and demanded that Defendant GTFM remove Plaintiff HGI's trademarks from its website.  Defendant GTFM subsequently removed Plaintiff HGI's marks from its website.

<u>FIRST CAUSE OF ACTION</u>

(Breach of Section 1.6 of the Agreement)

43. Plaintiff HGI repeats and realleges paragraphs 1 to 42 of this Complaint as if fully set forth herein.

44. Defendant GTFM has breached Section 1.6 of the Agreement by failing to provide suitable team apparel to the Harlem Globetrotters in a timely manner and by withholding at least $205,640.06 of HGI's royalties to pay for the defective and untimely merchandise.

45. Plaintiff HGI has suffered damages as a result of Defendant GTFM's breach.

## SECOND CAUSE OF ACTION

(Breach of Section 2.2 of the Agreement)

46. Plaintiff HGI repeats and realleges paragraphs 1 to 45 of this Complaint as if fully set forth herein.

47. Defendant GTFM has breached Section 2.2 of the Agreement by failing to provide timely quarterly royalty statements and payments and by withholding such payments.

48. Plaintiff HGI has suffered damages as a result of Defendant GTFM's breach.

## THIRD CAUSE OF ACTION

(Breach of Section 2.5 of the Agreement)

49. Plaintiff HGI repeats and realleges paragraphs 1 to 48 of this Complaint as if fully set forth herein.

50. Defendant GTFM has breached Section 2.5 of the Agreement by failing to keep complete and accurate records of all transactions related to the Agreement and by failing to cooperate with Plaintiff HGI during its audit of such transactions.

51. Plaintiff HGI has suffered damages as a result of Defendant GTFM's breach.

## FOURTH CAUSE OF ACTION

(Breach of Section 4.2 of the Agreement)

52. Plaintiff HGI repeats and realleges paragraphs 1 to 51 of this Complaint as if fully set forth herein.

53. Defendant GTFM has breached Section 4.2 of the Agreement by failing to certify to Plaintiff HGI the amount of monies expended on advertising during the first year of the Agreement and by failing to provide a summary of such advertising expenditures.

54. Plaintiff HGI has suffered damages as a result of Defendant GTFM's breach.

### FIFTH CAUSE OF ACTION

55. Plaintiff HGI repeats and realleges paragraphs 1 to 54 of this Complaint as if fully set forth herein.

56. Defendant GTFM has breached Section 6.3 of the Agreement by failing to discontinue using Licensed Property (including Plaintiff HGI's marks) after Plaintiff HGI terminated the Agreement.

57. Plaintiff HGI has suffered damages as a result of Defendant GTFM's breach.

### SIXTH CAUSE OF ACTION

(Conversion)

58. Plaintiff HGI repeats and realleges paragraphs 1 to 57 of this Complaint as if fully set forth herein.

59. By placing Plaintiff HGI's earned royalty payments in trust under the dominion and control of Defendant GTFM and its attorneys, and thereby interfering with Plaintiff HGI's ownership interest in the royalty payments, Defendant GTFM has committed the tort of conversion.

60. Defendant GTFM has acted willfully, wantonly, maliciously and in reckless and willful disregard of Plaintiff HGI's rights in converting Plaintiff HGI's royalty payments.

61. Plaintiff HGI has suffered damages as a result of Defendant GTFM's tortious behavior.

## SEVENTH CAUSE OF ACTION

(Accounting)

62. Plaintiff HGI repeats and realleges paragraphs 1 to 61 of this Complaint as if fully set forth herein.

63. Plaintiff HGI is entitled to receive from Defendant GTFM all royalties due under the Agreement and, unless Defendant GTFM is directed to account for all transactions under the Agreement, Plaintiff HGI will be unable to ascertain and recover same.

64. As to such, Plaintiff HGI has no adequate remedy at law.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff HGI respectfully requests that the Court enter an Award:

(a) declaring Defendant GTFM in breach of Sections 1.6, 2.2, 2.5, 4.2 and 6.3 of the Agreement;

(b) directing Defendant GTFM to comply with Sections 1.6, 2.2, 2.5, 4.2 and 6.3 of the Agreement;

(c) directing Defendant GTFM to release all royalty payments owed to Plaintiff HGI and enjoining Defendant GTFM from withholding any future royalty payments;

(d) directing Defendant GTFM to cooperate fully (including providing all necessary documents) with Plaintiff HGI's audit;

(e) directing Defendant GTFM to account for all sales of licensed products under the Agreement;

(f) directing Defendant GTFM to pay Plaintiff HGI damages in an amount to be determined;

(g) enjoining Defendant GTFM from using Licensed Property, including the Harlem Globetrotters marks, in any way;

(h) directing Defendant GTFM to pay Plaintiff HGI punitive damages;

(i) directing Defendant GTFM to pay Plaintiff HGI the costs of this action, together with reasonable attorney's fees and costs; and

(j) granting interest as is deemed applicable and such other and further relief as the Court deems necessary and proper.


Dated: New York, New York
       April 12, 2005

VLADECK, WALDMAN, ELIAS & ENGELHARD, P.C.

By: *Judith P. Vladeck*
Judith P. Vladeck (JV 2908)
Attorneys for Plaintiff
1501 Broadway, Suite 800
New York, New York 10036
(212) 403-7300

Edward R. Garvey, Esq.
(pro hac vice admission pending)
Garvey & Stoddard, S.C.
Attorneys for Plaintiff
634 West Main Street - Suite 101
Madison, WI 53703